

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 12, 1947

Hon. George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-373

Re: Whether LO covered
hopper cars belong-
ing to Halliburton
Oil Well Cementing
Co. are subject to
ad valorem taxes
and if so, the tax-
able situs under
facts stated

Dear Mr. Shepperd:

You request our opinion in reference to the
above captioned matter, based upon the facts as out-
lined in letters to you from Halliburton Oil Well Ce-
menting Company, which facts are as follows:

"The Halliburton Oil Well Cementing
Company is primarily engaged in the ser-
vicing of oil and gas wells and in connec-
tion, therewith, sells some oil field sup-
plies. One of the items which we sell is
cement. This Company has recently purchas-
ed several LO covered hopper cars which are
specifically designed to haul dry bulk
cement over or on railroad tracks. The
cars are hauled on the railroad tracks by
the railroad companies and the railroad com-
panies pay us on a mileage basis for the
use of the cars. The cars which we own are
used exclusively to haul cement for us.

" . . ."

"At the present time, this Company as-
signs railroad cards to a certain location
in much the same manner as we assign our
trucks. As an example, we have a bulk ce-
ment storage plant at Hawkins, Texas, and
there are now two railroad cars assigned to
that plant. By the end of the year, however,

there may be none or as many as five or six cars assigned to this plant depending upon the amount of business in that particular area. If the cement business increases at Hawkins, it is possible that one or more railroad cars which are now assigned to our Odessa plant may be transferred to Hawkins, and by the same token one or more of the cars now assigned to the Hawkins plant may be transferred to our Levelland plant in case the cement business increases at Levelland and decreases at Hawkins.

"We use these railroad cars as storage bins to a large extent. I do not believe that we have any railroad cars which are not in use unless, of course, they are in need of repair. Railroad cars which are stationed or headquartered at Hawkins are loaded with cement at Dallas, Ft. Worth, Houston, Ada, Oklahoma, and in the State of Arkansas. In the past it has been impossible to get enough cement at Dallas and Ft. Worth to supply our bulk cement plants in the Dallas and Ft. Worth area. Railroad cars assigned to our Odessa plant are loaded with cement at El Paso and San Antonio and at some locations in Kansas and Nebraska. As a matter of practice, the cement is purchased at the most convenient cement manufacturing plant if that plant can supply us.

"In case our business should fall off to such an extent that part of our railroad cars would become idle, I believe it would be safe to say that the idle cars would be kept at the location where they are assigned. I do not believe that they would be brought into our home office here at Duncan, unless circumstances change in the future.

"When you submit this question to the Attorney General, we shall appreciate it if you will advise him that we are required to pay mileage taxes in the States of Kansas, Oklahoma and New Mexico, on cars which travel through those states. These mileage taxes are in lieu of property taxes and apply to all

miles traveled regardless of the location
to which the cars have been permanently or
temporarily assigned.  Property taxes are
levied in the States of Arkansas, Colorado,
Louisiana, Mississippi, etc., on a mileage
basis and the permanent or temporary loca-
tion of the car is not taken into consider-
ation in arriving at the ad valorem tax.
The miles traveled in those states as com-
pared with the miles traveled everywhere is
the ordinary basis used for arriving at the
valuation upon which the ad valorem tex is
levied.  You will recall our letter of Aug-
ust 15 in which we stated that the cars which
are assigned to our various locations or
plants in Texas are used and travel in the
States of Arkansas, Kansas, Oklahoma, Ne-
braska, Louisiana, New Mexico and Texas."

The common law maxim of "mobilia sequuntur per-
sonam" (movables follow the person), that is, that per-
sonal property has its legal situs for taxation purposes
at the place of the owners domicile, is the general rule
in Texas.  Although the Constitution of Texas (Art. VIII,
Sec. 11) provides that "all property, whether owned by
persons or corporations shall be assessed for taxation,
and taxes paid in the county where situated,"it has been
held by the Supreme Court of Texas that this provision
is no more than a declaration of the common law rule in
that "since it had reference to the taxing power, it evi-
dently meant property where situated for the purposes of
taxation under the general principles of law as then
understood."  City of Fort Worth v. Southland Greyhound
Lines, 67 S. W. (2d) 361; G. C. & S. F. Ry. Co. v. City
of Dallas, 16 S. W. (2d) 292; Great Southern Life Ins.
Co. v. City of Austin, 243 S. W. 778; City of Galveston
v. Haden, 214 S. W. 766; Ferris v. Kimble, 12 S.W. 689.
This interpretation is said also to apply to Article
7153, Revised Civil Statutes of Texas, as amended, en-
acted pursuant to the above constitutional provision (See
cases supra), which provides:

"All property, real and personal, except
such as is required to be listed and assessed
otherwise, shall be listed and assessed in the
county where it is situated; and all personal
property, subject to taxation and temporarily
removed from the State or county, shall be
listed and assessed in the county of the resi-

dence of the owner thereof, or in the county where the principal office of such owner is situated."

However, the principle that the taxable situs of personal property is at the residence of the owner is not without exceptions and it appears well settled that tangible personal property may acquire a situs for taxation elsewhere than the owner's domicile. Galveston v. Haden, supra, and 51 Am. Jur. Sec. 451, p. 466. It is said that the situs of tangible personal property depends on the character of its use, G. C. & S. F. Ry. Co. v. City of Dallas, supra, and that the test is whether or not the property is situated within the jurisdiction solely for use and profit there. 51 Am. Jur., Sec. 454, p. 469 and cases cited.

The principles governing the situs of personal property in connection with the State's power of taxation apply generally to the situs of such property for the purposes of local taxation 40 Tex. Jur., Sec. 22, p. 38; and clearly property in transit or only temporarily in a jurisdiction other than that of the owner's domicile does not acquire taxable situs in such jurisdiction Fort Worth v. Southland Lines, supra; Ferris v. Kimble, supra; 51 Am. Jur., Sec. 455, p. 469. Delays in transit, however, may create taxable situs in a jurisdiction through which the property passes; and such result depends on the nature and duration of the delay 51 Am. Jur., Sec. 455, supra; Anno. 116 A.L.R., 724.

In Attorney General's Opinion No. O-5632 it was held that trucks operated exclusively in Nueces County acquired a business situs therein, and were subject to ad valorem taxes imposed by Nueces County although the owner's domicile was elsewhere. Also, in Attorney General's Opinion No. O-3702 it was held that where road building equipment was situated in a county other than that of the residence of the owner on a permanent basis in relation to the taxing year in question, it was taxable in the county where actually situated.

The fact that the cars in question travel in interstate commerce while going to and from a cement plant and that while so traveling in the States of Arkansas, Colorado, Mississippi and other States property taxes are levied against them on a mileage basis does not affect their taxability in Texas. It has long been settled by the

U. S. Supreme Court that property having its situs with-
in the taxing States is not exempt from a nondiscrimns-
tory property tax merely because the property is used in
interstate commerce.  Virginia v. Imperial Coal Sales Co.,
Inc., 293 U. S. 15, 55 Sup. Ct. 12.  The Supreme Court
of the United States in First Bank Stock Corp. v. State
of Minnesota, 301 U. S. 234, 57 S. Ct. 677, held that
property owned by a Delaware corporation doing business
in Minnesota, said property being located and used in
Minnesota in connection with the corporation's business
activities, acquired a "commercial domicile" and taxable
situs in Minnesota.  The court further held it was im-
material that such property was also subject to taxation
in another State.

Based upon the facts as given us, it seems clear,
under the authorities cited, that the cars in question
are subject to ad valorem taxation in Texas, and that they
have a business situs for taxation purposes in the county
to which they are assigned.  It appears that these cars
were "recently purchased" by Halliburton Company.  Of
course if they were not owned by Halliburton and located
in Texas on last January 1st there would be no taxes due
thereon for this year.  The county to which the cars may
be assigned and located on January 1, 1948, determines
their taxable situs for next year.  The fact that the car
or cars may be temporarily out of the county of its situs
on January 1st for refilling or other purposes would not
affect either its taxability or taxable situs.

## SUMMARY

10 covered hopper railroad cars owned
by Halliburton Oil Well Cementing Co., and
assigned to various counties in Texas and
there used as storage bins for cement, un-
der the facts stated, are subject to ad valor-
em taxation in Texas; and the taxable situs
of each car is in the county to which it is
assigned.  Art. 7153 V.C.S.; City of Ft.
Worth v. Southland Greyhound Lines, 67 S. W.

(2d) 361; Virginia v. Imperial Coal Sales Co.,
Inc., 293 U. S. 15; First Bank Stock Corp., v.
State of Minn., 301 U. S. 234.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

W. V. Geppert
Assistant

WVG/mmo/lh

APPROVED

ATTORNEY GENERAL